IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**CAROLYN T.,**

   **Plaintiff,**

 v.           Civil Action 3:23-cv-00346
               Judge Michael J. Newman
               Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

   **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Carolyn T., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I. BACKGROUND**

Plaintiff filed her applications for DIB and SSI in February 2021, alleging that she was disabled beginning February 20, 2018, due to migraine headaches, major depression, generalized anxiety, and post-traumatic stress disorder (PTSD). (R. at 237–46, 250–56, 294). After her applications were denied initially and on reconsideration, Administrative Law Judge Gregory Kenyon (the "ALJ") held a telephonic hearing on March 14, 2023. (R. at 36–66). Ultimately, the ALJ denied Plaintiff's applications in a written decision on June 7, 2023. (R. at 15–35). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. at 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on November 20, 2023. (Doc. 1). As required, the Commissioner filed the administrative record, and the matter has been fully briefed. (Docs. 7, 10, 11, 13).

### A. Relevant Statements to the Agency

The ALJ summarized Plaintiff's function report presented to the agency and her testimony from the administrative hearing as follows:

> [Plaintiff] alleged difficulty with memory, completing tasks, concentration, understanding, and getting along with others, but no difficulty following instructions (4E/10). [Plaintiff] alleged no difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, or using her hands (4E/10). [Plaintiff] alleged that she finishes 80% of the things that she starts (4E/10). [Plaintiff] alleged that she does not handle stress well, and that while she does not like changes in routine, she "can get used to it" (4E/11). At hearing, [Plaintiff] testified that she has dealt with migraine headaches all of her life (Testimony). [Plaintiff] testified that smoking marijuana has helped her migraines (Testimony). [Plaintiff] testified that she has crying spells and symptoms of depression (Testimony). [Plaintiff] testified that she has difficulty with memory, and that she has nightmares and flashbacks (Testimony). [Plaintiff] testified that she does not like going to the mall, and that she has panic attacks one time per month now, and two times per week when working (Testimony).

(R. at 24).

### B. Relevant Medical Evidence

The ALJ also summarized Plaintiff's medical records and symptoms related to her mental health issues during the relevant period:

> [Plaintiff]'s reports regarding her headaches are not supported by the overall evidence. [Plaintiff] reported that her migraines started in college years ago, and she has been able to work full time with her migraine condition (12F; 6D). [Plaintiff] reported that sumatriptan medication has been effective as abortive therapy, however, she ran out of the medication (12F/130, 136). Indeed, the record details that [Plaintiff] runs out of her sumatriptan abortive mediation regularly. Moreover, [Plaintiff] reported that sumatriptan medication was effective for her headaches. [Plaintiff] was also told to keep a headache journal and follow-up to discuss it, however, the record does not indicate that [Plaintiff] ever followed such advice (1F/50; 12F/124). In fact, [Plaintiff]'s provider discussed her having a "migraine tracker app" to determine triggers, sleep cycles, and relations to food (1F/46, 49). At a November 2019 follow-up appointment with Dr. Rodriguez,

[Plaintiff] reported that her migraines "have been improving" and that she has only had "one migraine in the last month," despite not having her migraine medication due to an insurance lapse while changing jobs (1F/10). [Plaintiff] reported that not only had her migraines reduced in frequency to just once per month, she also reported that they only lasted two days instead of four to five (1F/10). [Plaintiff] reported a lapse in insurance, but she acquired Medicaid and went back to her primary care provider, presumably Dr. Rodriguez, and restarted Topamax (13F/3). Additionally, [Plaintiff] told her counselor that she only drinks caffeine if she has a migraine, which is not daily (13F/3). At that counseling appointment, [Plaintiff] reported that her migraines may be from a "lack of alignment" and she was going to see a chiropractor. [Plaintiff] reported that she has had less migraines (13F/3). [Plaintiff] also reported stomach issues as a work stressor, however, she was non-compliant with MiraLAX medication (SSR 16-3p) (14F/1, 26 versus 13F/3). In sum, the notes indicate sumatriptan is effective at controlling [Plaintiff]'s reported migraines. [Plaintiff] reported that a trigger for migraines when she is working includes supervisor and manager feedback (6F/26). [Plaintiff]'s migraines were accounted in part by no over the shoulder supervision, no strict production quotas or fast paced work, and few changes in routine.

[Plaintiff] also has depression, anxiety, and post-traumatic stress disorder (PTSD) (Record). Indeed, most of the evidence in this case deals with [Plaintiff]'s level of psychological functioning. [Plaintiff] was hospitalized for suicidal ideations in March 2018, but these were of a low lethality nature (1F/87). [Plaintiff]'s depression, anxiety, and PTSD stem in part from a remote prior sexual assault. [Plaintiff]'s mental health, however, has stabilized since the time of her March 2018 hospitalization. [Plaintiff]'s progress notes from South Community have continually referenced a very high level of daily functioning, which has included working as a "dog party" planner at Pets Smart working a various jobs, including Coldstone Creamery, and as a childcare worker for children with behavioral problems, and socializing with her roommates and boyfriend (1F/41; 2F; 3F; 6F; 8F; 13F; 14F). [Plaintiff] has also had a number of jobs, which seemingly dispels any notion that [Plaintiff] has social functioning deficits (8F). However, [Plaintiff]'s moderate limitation in social functioning was accounted for with a limitation to no over the shoulder supervision, based on [Plaintiff]'s apparent sensitive nature to receiving feedback (3A; 7A). [Plaintiff] has consistently worked in and continued to obtain public facing jobs since her alleged onset date, including as a barista, food server, and childcare worker with behaviorally challenged children. [Plaintiff] testified that she has flashbacks, and the notes indicate that [Plaintiff] reported flashbacks during sleep, and when she thinks about a particular friend (2F/7, 11, 24, 25, 139). ***

The objective examination findings consistently indicate that [Plaintiff] is fully oriented and has normal memory, including adequate recent memory and adequate remote memory (1F/93, 95, 127; 2F/46, 58, 63, 72, 76, 81, 85, 90, 94, 107, 119, 132, 142, 154, 171, 180, 190, 199, 214, 222, 230, 247, 252, 268, 282, 292, 300, 310; 3F/14, 26, 32, 37; 6F/1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19,

3

> 20, 21, 22, 23, 24, 25, 26; 8F/3, 13, 18, 22, 27; 13F/5; 14F/1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31). On physical consultative examination, [Plaintiff]'s orientation and memory was found to be "good" (4F/7). [Plaintiff]'s objective examination notes consistently indicate that she has alert, normal, or "good" concentration and "good" focus and attention, despite her reports to the contrary (1F/93, 109, 113; 2F/72, 76, 81, 85, 90, 94, 107, 119, 132, 142, 154, 171, 180, 190, 199, 214, 222, 230, 247, 252, 268, 282, 292, 300, 310, 326; 3F/14, 26, 32, 37; 6F/1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26; 8F/3, 13, 18, 22, 27; 13F/5; 14F/1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31).
>
> On consultative examination, [Plaintiff] adequately completed Serial 7s task and she did not have difficulty following conversation (9F/4). The objective examination findings consistently indicate that [Plaintiff] has normal eye contact, behavior, psychomotor activity, and speech (1F/92, 95, 127; 2F/13, 30, 45, 46, 58, 63, 72, 76, 80, 84, 85, 89, 90, 94, 97, 99, 101, 107, 110, 112, 114, 118, 119, 122, 129, 131, 132, 135, 137, 139, 142, 146, 148, 151, 154, 158, 160, 166, 168, 171, 176, 180, 183, 196). On consultative examination, [Plaintiff] reported that she spends time with other people, specifically her boyfriend and some friends by text for up to an hour or more (9F/5). [Plaintiff]'s objective examination notes consistently indicate that [Plaintiff] has "excellent," adequate, normal, fair, or good insight, judgment, and impulse control (1F/95; 2F/30, 46, 58, 63, 72, 76, 81, 85, 90, 94, 119, 132, 142, 154, 171, 180, 190, 199, 212, 213, 214, 222, 230, 252, 267, 268, 271, 282, 292, 300, 310; 3F/14, 26, 32; 6F/1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26; 8F/3, 13, 18, 22, 27; 13F/5; 14F/1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31 versus 1F/99). On consultative examination, [Plaintiff]'s insight was found to be realistic, and the examiner concluded that she has "good" judgment (9F/4). ***

(R. at 24–26).

    C.    **The ALJ's Decision**

The ALJ found that Plaintiff meets the insured status requirement through September 30, 2025. (R. at 20). She engaged in substantial gainful activity in 2021. (*Id.*). But, said the ALJ, there had been a continuous 12-month period(s) during which Plaintiff did not engage in substantial gainful activity. (R. at 21). The ALJ also determined that Plaintiff has the following severe impairments: history of headaches; depression; anxiety; and post-traumatic stress disorder

4

(PTSD). (*Id.*). Still, the ALJ found that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment. (*Id.*).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: (1) no climbing of ladders, ropes, or scaffolds; (2) no work around hazards, such as unprotected heights or dangerous machinery; (3) no driving of automotive equipment; (4) no concentrated exposure to temperature extremes, respiratory irritants, loud noise, and wet or humid areas; (5) simple, routine, repetitive tasks; (6) no fast paced work; (7) no strict production quotas; (8) no close over the shoulder supervision; and (9) limited to work that involves very little, if any, change in the job duties or the work routine from one day to the next.

(R. at 23).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 24).

The ALJ determined that Plaintiff is unable to perform her past relevant work as a barista. (R. at 28). The ALJ relied on testimony from a Vocational Expert ("VE") to determine that given Plaintiff's age, education, work experience and RFC, she was able to perform work that existed in significant numbers in the national economy, such as a floor waxer, warehouse worker, or an industrial cleaner. (R. at 28–29). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since February 20, 2018. (R. at 29).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial

5

evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff argues that the ALJ "reversibly erred by purportedly finding the opinion of Dr. Arnold 'persuasive,' but failing to fully accommodate her opinion, or at least explain why her opinion was not fully adopted." (Doc. 10 at 5–7). The Commissioner responds that the ALJ appropriately accounted for Dr. Arnold's opinion in the RFC, and substantial evidence supports the decision. (Doc. 11 at 3–5).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). When determining the RFC, the ALJ must evaluate several factors, including medical evidence, medical opinions, and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). In doing so, the ALJ must resolve conflicts in the record. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of*

*Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)).  Again, this Court must affirm the ALJ's decision if it is supported by substantial evidence.  *See Christine G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-1969, 2023 WL 5717417, at *6 (S.D. Ohio Sept. 5, 2023) (stating that the court must affirm if substantial evidence supports the ALJ's decision, even if the court would have resolved conflicts in the record differently).

In September 2022, Dr. Arnold met with Plaintiff for a mental disability evaluation.  (R. at 1057).  She noted that Plaintiff was first diagnosed with mental health disorders in 2018 during a four-day "inpatient unit" hospitalization for suicidal ideation.  (R. at 1058).  Dr. Arnold then catalogued Plaintiff's relevant symptoms.  (*Id.* ("low motivation and energy, cries often, sleep difficulties, nightmares, flashbacks, difficulty with friends who do bad things to her, stomach aches, afraid of older adult females who remind her of her mother.")).  She highlighted that counseling, medication, and medical marijuana were at least somewhat helpful in bringing relief to Plaintiff's symptoms.  (*Id.*).  Dr. Arnold found that "daily and work stresses" increase Plaintiff's symptoms.  (*Id.*).  She then summarized Plaintiff's work history, noting that she left one job "due to asking for a mental health leave of absence" and that she "had issues with her female supervisor who was critical and reminded her of her mother.  She was let go due to not having enough [unpaid time off] for a leave of absence."  (*Id.*).  Dr. Arnold diagnosed Plaintiff with PTSD, depression, and anxiety.  (R. at 1060).  She said her prognosis was "fair and could be improved by continued supportive counseling."  (*Id.*).

In Plaintiff's functional assessment, Dr. Arnold opined that Plaintiff could understand, remember, and carry out instructions; follow a conversation; think abstractly; and apply reason.  (R. at 1061).  She noted that Plaintiff's long-term and short-term memory were intact, but her

7

mental flexibility was "less intact." (*Id.*). And although Plaintiff could sustain concentration and show persistence with simple and multi-step tasks, she was "distractable, anxious and fatigued," as evidenced by her performance on a functional task. (*Id.*). Finally, Dr. Arnold noted that Plaintiff has "a history of interacting somewhat well with most co-workers and sometimes had difficulty with female supervisors and male supervisors who were not respectful of her mental health issues. She has a history responding inadequately to workplace pressures by feeling anxious and overwhelmed and usually quitting. She has been fired only once." (*Id*).

> In evaluating Dr. Arnold's opinion, the ALJ determined:
>
> On September 14, 2022, [Plaintiff] presented to Dr. Arnold for psychological consultative examination (9F). Dr. Arnold examined [Plaintiff] and diagnosed depression, anxiety, and PTSD. Dr. Arnold's mental status examination showed that [Plaintiff] was cooperative and fully oriented to all spheres. Dr. Arnold noted that [Plaintiff] had intact insight and judgment, and that [Plaintiff] could understand and follow simple instructions, and that [Plaintiff] reported no difficulty with social interactions. Dr. Arnold noted that [Plaintiff] reported difficulty with some supervisors in the past where were "not respectful of her mental health issues," which is probably why the other physicians of record precluded [Plaintiff] from having close over the shoulder supervision. Dr. Arnold also notes some deficits in stress tolerance, however, these deficits are fully accommodated by limitations. Therefore, Dr. Arnold's opinion is persuasive.

(R. at 27).

Plaintiff argues that, despite finding the opinion persuasive, the ALJ did not incorporate Dr. Arnold's opined limitations in the RFC and did not explain why not. (Doc. 10 at 5); *see, e.g.*, *Howard v. Comm'r of Soc. Sec.*, No. 3:14-CV-364, 2015 WL 8213614, at *4 (S.D. Ohio Dec. 9, 2015) ("[T]he ALJ must meaningfully explain why certain limitations are not included in the RFC determination —especially when such limitations are set forth in opinions the ALJ weighs favorably."), *report and recommendation adopted*, No. 3:14-CV-364, 2016 WL 99114 (S.D. Ohio Jan. 7, 2016). Plaintiff says: "An individual who is distractible, anxious, and fatigued with a history of responding inappropriately to workplace pressures and needing accommodations like

extra breaks and shorter shifts would be unable to sustain full-time competitive employment at any exertional level." (*Id.* at 7). Further, she comments that Dr. Arnold's opinion is consistent with other opinions by Plaintiff's counselor Samantha Ventrella who found Plaintiff unable to work a full workday and needing short shifts and extra breaks. (*Id.* at 6; *see* R. at 990 (stating symptoms related to Plaintiff's generalized anxiety disorder would require "shorter shifts, extra breaks if necessary" as an accommodation at Chewy), 1082–84 (opining Plaintiff would be off task more than 20% of the work day, would be absent more than three times a month, and had several marked or extreme limitations in the ability to sustain a routine, attend work, and work a full day without an unusual amount of rest periods); *see also* R. at 359–360 (work activity report saying at one position Plaintiff "was allowed to take as many breaks as I wanted in my car as long as I took the phone with me and finished my tasks" and at another she was granted decreased hours and "more breaks.")).

To begin, the ALJ found Ms. Ventrella's opinions not persuasive, as the opinions were based on Plaintiff's subjective complaints and unsupported by the record. (R. at 27). So, whether Dr. Arnold's opinion was consistent with Ms. Ventrella's opinions is irrelevant here, as Plaintiff did not challenge the consistency assessment of either opinion.

More to the point, Dr. Arnold did not opine that Plaintiff would need extra breaks or shorter shifts as a functional restriction—the opinion did not mention breaks or shift time at all. (*See generally* R. at 1057–1061). And she did not opine a specific functional limitation related to Plaintiff's ability to respond to workplace stress or pressure—only that Plaintiff had a history responding inadequately. *Cf. Putman v. Comm'r of Soc. Sec.*, No. 2:20-CV-3895, 2021 WL 2700330, at *4 (S.D. Ohio July 1, 2021) ("Dr. Sarver's findings that Plaintiff was 'likely' to have difficulties does not provide a clear statement as to what particular difficulties Plaintiff would have

9

or what specific job functions she would be capable, or incapable, of performing."). Similarly, Dr. Arnold's observation that Plaintiff "was distractible, anxious and fatigued" as evidenced by her performance on a functional task does not necessarily translate to a specific functional limitation. *Cf. Chad M. v. Comm'r of Soc. Sec.*, No. 2:23-CV-1215, 2024 WL 1930748, at 4 (S.D. Ohio May 1, 2024) (an opinion stating a plaintiff was easily distracted by ambient noise during an assessment interview did not offer a specific functional limitation); *Basquez v. Comm'r of Soc. Sec.*, No. 3:21-CV-01777-JJH, 2022 WL 4651519, at *7 (N.D. Ohio July 20, 2022), (an opinion that a plaintiff would have difficulty concentrating "does not provide a specific functional limitation for the ALJ to adopt"), *report and recommendation adopted*, No. 3:21-CV-1777, 2022 WL 4599194 (N.D. Ohio Sept. 30, 2022). As a result, the ALJ was not under any obligation to further explain his treatment of Dr. Arnold's opinion.

Regardless, the ALJ accounted for Plaintiff's deficits in stress tolerance and anxiety in the RFC. (R. at 27 ("Dr. Arnold also notes some deficits in stress tolerance, however, these deficits are fully accommodated by limitations.")). Particularly, the RFC included restrictions for "simple, routine, repetitive tasks; no fast paced work; no strict production quotas; [and] no close over the shoulder supervision and limited to work that involves very little, if any, change in the job duties or the work routine from one day to the next." (R. at 23 (cleaned up)).

More still, the ALJ's RFC finding is supported by substantial evidence. In addition to evaluating Dr. Arnold and Ms. Ventrella's opinions, the ALJ considered other record evidence related to Plaintiff's depression, anxiety, and post-traumatic stress disorder. The ALJ noted that Plaintiff was hospitalized for suicidal ideations in March 2018 but her mental health has since "stabilized," although she still suffers from various symptoms such as flashbacks and panic attacks. (R. at 25, citing *e.g.*, R. at 59 (hearing testimony); 460, 602–03, 619–20, 734). The ALJ considered

10

that Plaintiff worked a variety of jobs, including public facing jobs, in recent years. (*Id.*, citing *e.g.*, R. at 414, 606. 778, 852, 860, 884, 965, 1308). The ALJ highlighted many objective examinations that stated Plaintiff was fully oriented with at least an adequate memory; had good concentration and focus; had normal eye contact, behavior, psychomotor activity, and speech; and had at least fair insight, judgment, and impulse control. (R. at 25–26, citing *e.g.*, R. at 465–66, 468, 608, 625, 641, 667, 948, 983, 993, 1027, 1059, 1310, 1315). Finally, the ALJ considered the opinions of the state agency psychologists, finding Dr. Murry-Hoffman's opinion that Plaintiff be limited to three to four step tasks with no fast-paced work, strict production quotas, or workplace changes persuasive based on the record evidence. (R. at 26–27, citing R. at 99–100). The ALJ further noted that even though the record showed Plaintiff does not have "significant social difficulties," he accepted Dr. Murray-Hoffman's opinion that Plaintiff "would do best with no over the shoulder supervision" considering Plaintiff's self-reported difficulty with criticism. (*Id.*, citing R. at 100). All said, because the ALJ considered Plaintiff's mental impairments and the impact of those impairments on her ability to work, substantial evidence supports the ALJ's RFC finding.

At base, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

11

In sum, the ALJ properly accounted for Dr. Arnold's opinion, and his ultimate RFC finding was supported by substantial evidence. Accordingly, the Undersigned finds no error.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **DENY** Plaintiff's Statement of Errors (Doc. 10) and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.

Date: May 22, 2024                      /s/ Kimberly A. Jolson
                                                   KIMBERLY A. JOLSON
                                                   UNITED STATES MAGISTRATE JUDGE